Filed 3/4/25  P. v. Yebio CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABRAHAM YEBIO,<br><br>    Defendant and Appellant. | D082695<br><br><br>(Super. Ct. No. SCD291989) |

APPEAL from a judgment of the Superior Court of San Diego County, Evan Kirvin, Judge.  Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.


Abraham Yebio appeals from a judgment of conviction after a jury trial. His appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). We notified Yebio of his right to file a supplemental brief, and he has not

done so.  Based on our independent review of the record, we find no reasonably arguable appellate issues and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Yebio was charged with 5 counts involving two victims, Crystal F. and Tiffany M.  As to Crystal, Yebio was charged in count 1 with attempted willful, deliberate and premeditated murder (Pen. Code,[1] §§ 664/187, subd. (a), 189); in count 2 with assault with a deadly weapon (§ 245, subd. (a)(1)); in count 3 with battery resulting in serious bodily injury (§ 243, subd. (d)).  It was alleged as to counts 1 and 2 that he personally inflicted great bodily injury (§ 12022.7, subd. (a)), and as to counts 1 and 3 that he personally used a deadly and dangerous weapon (a knife) (§ 12022, subd. (b)(1)).  The jury deadlocked as to all counts involving Crystal and the trial court declared a mistrial as to these counts.

As to Tiffany, Yebio was charged in count 4 with assault with a deadly weapon (§ 245, subd. (a)(1)) with the allegation he personally inflicted great bodily injury (§ 12022.7, subd. (a)); and in count 5 with battery resulting in serious bodily injury (§ 243, subd. (d)) with allegations he personally inflicted great bodily injury (§ 1192.7, subd. (c)(8)) and that he personally used a deadly and dangerous weapon (a knife) (§ 12022, subd. (b)(1)).  The jury convicted Yebio of both counts and all enhancement allegations involving Tiffany.  As to both counts, the jury further found true the aggravating circumstance that Yebio used great violence or committed an act revealing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)).  It found not true that as to both counts Yebio posed a serious danger to society (*id.*, rule 4.421(b)(1)).

---

[1]    All further undesignated statutory references are to the Penal Code.

2

At sentencing on July 17, 2023, the trial court imposed a total prison term of six years. The court found the only aggravating circumstance was that Yebio used great violence and committed an act showing a high degree of cruelty, viciousness, or callousness and the only mitigating circumstance was that he had no prior criminal history. The court further found Yebio had a history involving psychological, physical or childhood trauma but it was not a contributing factor in the commission of the offenses, and even if a contributing factor, the court found the imposition of the lower term would be contrary to the interest of justice. Considering all these factors, the court imposed the middle term of three years on count 4 plus three years for the section 12022.7, subdivision (a) enhancement, for a total of six years. The court imposed the middle term of three years on count 5 plus one year for the section 12022, subdivision (b)(1) enhancement but stayed the term pursuant to section 654.

On September 13, 2023, Yebio pled guilty to count 2, assault with a deadly weapon as to Crystal, and admitted the section 12022.7, subdivision (a) enhancement, which were pending retrial along with the other counts on which the jury deadlocked. On October 12, 2023, Yebio was resentenced to a total prison term of 8 years. The court selected count 2 as the new base term, imposed the middle term of three years plus three years on the section 12022.7, subdivision (a) enhancement; imposed a one-year subordinate term for count 4, plus one year for the section 12022.7, subdivision (a) enhancement. The court again imposed the middle term of three years on count 5 plus one year for the section 12022, subdivision (b)(1) enhancement but stayed the term pursuant to section 654.

We summarize primarily the evidence underlying the conviction offenses.

3

On October 2, 2021, Tiffany M. was working as the security guard at an apartment complex that provided studio apartments to formerly unhoused individuals and low-income households. As Tiffany stood guard outside the building, she saw Crystal at the street corner talking to a resident. Yebio, also a resident, walked to the corner and waved Crystal over. Crystal walked over to him, the two talked, and then they walked back to the apartment building and entered together. It was about 2:30 in the morning.

An hour later, at 3:30 a.m., Yebio came outside to smoke a cigarette and went back in. Minutes later, Crystal came out with her hand on her neck and there was "blood everywhere." She was bleeding at her neck. Crystal asked Tiffany to call 911. Tiffany panicked and called her dispatch company instead. When Yebio came out, with blood on his clothes, Tiffany walked Crystal across the street away from him. Yebio followed them. At some point, Tiffany asked Crystal, "Did he do this?" and Crystal nodded her head. Tiffany repeatedly told Yebio "to stay away, to back off," but he kept moving closer to them.

The dispatch company "loop[ed]" in 911 while still on the call with Tiffany. Tiffany began to provide information to the 911 dispatcher, including a description of Yebio's clothing, race, and age, while Yebio stood nearby. At some point, Tiffany turned her back on Yebio to look over her shoulder and check on Crystal. At that moment, Tiffany felt "two hits" to her back at the left side around her shoulder blade. She then felt "warm water being poured down [her] back" and realized she was bleeding because she had been stabbed.

L.L. was visiting his girlfriend who lived at the apartment complex that night. He was awakened by loud noises, "banging" and "slamming" from the floor above him. When he and his girlfriend went down to the lobby and

4

outside the building, L.L. saw Yebio run "at the security guard with a knife" and when she turned, "he stabbed her in the back." Fearing Yebio was "going to keep doing it," L.L. went towards him and yelled, "Stop stabbing her." Just then the police arrived.

After Yebio was taken into custody, the police found a bloody knife on the ground underneath a truck in the vicinity of where Yebio was taken into custody. The knife was approximately eight inches long with a four-inch blade. Crystal confirmed it was the knife she brought into Yebio's apartment.

Both Tiffany and Crystal were taken to the hospital.[2] Tiffany received five sutures for an approximate two-centimeter stab wound to her back. It took about a month for her to heal, during which she was in daily pain.

Yebio presented several character witnesses and testified in his defense. At 12:30 a.m. the day of the incident, he left his apartment to smoke on the street. He saw Crystal at the street corner, a woman he knew lived in a nearby tent. After overhearing another resident decline Crystal's request to take a shower inside the resident's apartment, he offered Crystal a shower in his apartment. They went to his apartment, she ate food he made for her, and they drank whiskey.

Three hours later, Crystal went to take a shower and Yebio went downstairs to smoke. Downstairs, Yebio began to feel "unusual" with his memory "going in and out"; he believed Crystal drugged him. He went back up to his apartment and found Crystal holding his wallet. She got "angry

---

[2]     Crystal underwent surgery for an approximate 4-centimeter stab wound to the left side of her neck, resulting in a transected external jugular vein, a partially transected trachea, and a puncture to her upper right lung. Toxicology results showed she had a blood alcohol level of .15 and she was positive for THC, methamphetamine and fentanyl.

and vicious" and started pushing him when he asked her why she had his wallet. He hit his head on the kitchen cabinets. She came at him with her knife—the one found by the police—and they began struggling because he was trying to not get stabbed. As they struggled, Crystal fell on the bed and, he believed, "she got stabbed." From there, he blacked out and does not remember anything else, including his encounter with Tiffany.[3]

## DISCUSSION

As mentioned, Yebio's appellate counsel filed a brief pursuant to *Wende*, *supra,* 25 Cal.3d 436 and *Anders*, *supra,* 386 U.S. 738, setting forth a statement of the case and statement of facts, and urging no grounds for reversal of the judgment. Counsel invites this court to independently review the record for error. We have done so and conclude the record discloses no reasonably arguable appellate issues for reversal of the judgment and affirm. Competent counsel has represented Yebio in this appeal.

---

[3] The jury was instructed on heat of passion and imperfect self-defense for the lesser included offense of attempted voluntary manslaughter, and the affirmative defenses of self-defense, accident, unconsciousness, voluntary and involuntary intoxication.

6

## DISPOSITION

The judgment is affirmed.

DO, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.